## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION**
**No. 1:12-cv-10540-WGY**

PATRICK MICHAUD,
                    **Plaintiff,**

**v.**

LAWRENCE A. CALDERONE,
KENNETH KELLY, JEFFREY
FIRNSTEIN, ROBERT SHEETS,
AND CITY OF BOSTON,
                    **Defendants.**

### DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S SPECULATIVE DAMAGES CLAIMS: LOST PAST OR FUTURE EARNING CAPACITY, LOSS OF EMPLOYMENT OPPORTUNITIES, REPUTATIONAL HARM, AND INABILITY TO ADOPT A CHILD

## I.        MOTION AND ARGUMENT

Now come the defendants and hereby move this Court to preclude the plaintiff from making claims at trial for lost future earning capacity, loss of future job opportunities, business and personal reputational harm, and inability to adopt a child on the grounds that he has failed to produce any evidence in support of such claims, offers only self-serving speculation in support of such claims, has not identified an expert as to his loss of future earning capacity claims, and admits he has never been denied a job as a result of his March 25, 2009 arrest or applied and been denied the opportunity to adopt a child. Further, plaintiff was a self-employed real estate developer and lawyer at the time of his arrest and has failed to produce any evidence of his annual income for the years before or after his arrest. Thus, plaintiff should not be allowed to

make a claim for lost earnings, lost future earnings, or loss of future job opportunities because those claims are speculative at best.

It would be unduly prejudicial to allow the plaintiff to pursue a loss of past or future earning capacity or loss of future job opportunities claim against the defendants because the plaintiff (1) failed to submit documentary evidence pursuant to Rule 26(a) in support of his damages claim; (2) refused to produce documents in support of his claim for loss of earning capacity, most notably his tax returns; (2) testified in his deposition that he did not know what his annual income was before or after his arrest; (3) offers only speculation regarding lost job opportunities or earning potential and admits he has never been denied a job due to his arrest; (4) is unable to estimate any financial loss he may have sustained; and (5) has no evidence that he's even been denied the opportunity to adopt a child. For these reasons, this Court should preclude the plaintiff from asserting any claim for lost wages, loss of earning capacity, future earning capacity, or employment opportunities.

### A. Plaintiff Has Failed To Comply With His Rule 26 And Discovery Obligations By Refusing To Produce Any Evidence of Lost Earnings, Lost Future Earnings, Or Loss of Job Opportunities.

The plaintiff has failed to comply with Fed. R. Civ. P. 26(a)(1) requiring him to provide a copy or description of all documents in his possession or control that he may use in support of his claims, and a computation of each category of damages he claims. Moreover, he has failed to comply with his written discovery obligations under Fed. R, Civ. P. 33 and 34. On November 2, 2012, the defendants served interrogatories upon the plaintiff. Interrogatory Number 18 asked the plaintiff to "[d]escribe in full complete detail any damages claimed by Plaintiff for the events described in the Complaint and the cause of these damages and please also specify the dollar amount of any such damages. In his January 9, 2013 answers, the plaintiff stated that "As a

result of the defendants' actions as described in the complaint, I have suffered injury to my reputation, defamation, a permanent criminal record which results in humiliation, anxiety, emotional harm, **loss of future job opportunity and loss of future earning capacity**, **inability to adopt a child**, I was falsely arrested, falsely imprisoned, I suffered humiliation, anxiety and emotional harm. I have also had to pursue legal action in relation to the charges and to expunge my record.  Damages are continuing and to be determined."

Turning to the Defendants' document requests, Request Number 11 requested "[a]ny and all documents **which evidence any time you missed from either employment** or school as a result of the incident contained in the Plaintiff's Complaint, including, but not limited to, pay stubs, federal income tax information and W-4 forms from tax years 2004 through the present date."   Request Number 12 requested "any and all documents which evidence or relate to **any and all damages that you allegedly sustained** as a result of the incident described in the Complaint." The plaintiff responded to these requests by stating that he was "in the process of locating tax returns with respect to the defendants' request and will supplement this response. Plaintiff further states that he has been self-employed since 2001.  Plaintiff reserves the right to supplement this request with records of time spent defending the criminal charges, seeking expungment of his criminal record and other related time spent involving this action."   In the year since, plaintiff has never supplemented his discovery responses.

At the plaintiff's deposition, he testified that he could not identify any single job for which he was denied as a result of his arrest record.  Although plaintiff had been a self-employed real estate developer and solo practitioner for at least nine years preceding his arrest, he makes a claim in this case for loss of future job opportunities.   Plaintiff, however, testified that he does not have any evidence that he applied for and was denied a job based on his arrest, nor was he

able to estimate what his damages were based on loss of future job opportunities, and he
conceded that his arrest did not prevent him from seeking real estate development opportunities
or from practicing law as a solo practitioner.

The plaintiff also testified at his deposition that he suddenly has the desire to pursue
teaching and "thinks" this arrest may negatively impact his ability secure a teaching position in
the future.  Plaintiff, however, has never produced any evidence to support this self-serving
claim that he is attending an educational program to obtain a degree in teaching, nor has he
provided any evidence that will be unable to obtain a teaching position.

Q:  Are you claiming that there's any jobs that you applied for and did not get
because of this arrest?

A:  No.  I would say no.

Q:  What law firms did you not apply to because of this arrest?

A:  I didn't apply to any law firms because of it.

Q:  What law firms were you considering applying to?

A:  I don't have any one in particular in mind, but I would have applied to some.

Q:  Just one more question with respect to the loss of future job employment
opportunities claim for damages.  Can you place a monetary value on that?

A:  I mean I suppose it could be in, you know, hundred thousand or more.  It's really
maybe a lot more.  It's hard to tell.

Q:  Are you placing the same value on that future earnings?

A:  It's hard to calculate an exact number

Q:  Are you still able to earn money doing your real estate developing projects?

A:  I suppose – I'm not sure.  I'm not sure.

4

Q: Are you claiming that you can't do any of the redeveloping and investing that you used to do now because of this arrest?

A: I'm not sure that I can't. I wouldn't say I can't do the developing.

Q: So on that point, you're going back to school to teach students; correct?

A: Correct

Q: How are you going to teach?

A: Well, it's a good question. It's a very good question. I'm not sure.

Q: That doesn't concern you? You're going to pursue this degree anyway?

A: It does concern me, but I can't wait forever.

Plaintiff has failed to provide any information or describe or provide any documents concerning his lost earnings claim in his initial disclosures pursuant to Fed. R. Civ. P. 26(a). The Federal Rules of Civil Procedure make it absolutely clear that when a party, such as the plaintiff here, fails to provide information as required by Fed. R. Civ. P. 26(a), the party is not allowed to use that information at trial. Fed. R. Civ. P. 37(c)(1). As the First Circuit Court of Appeals has described the rule, it "contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion." *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998) ( "absent some unusual extenuating circumstances . . . the appropriate sanction when a party fails to provide certain evidence to the opposing party as required in the discovery rules is preclusion of that evidence from the trial"). The First Circuit Court of Appeals has also made clear that no court order needs to be entered requiring a party to comply with the disclosure provisions of Rule 26(a) before a trial court imposes sanctions for violating that Rule. *Ortiz-Lopez v. Sociedad Espanola De Auxilio Mutuo Y Beneficiencia De Puerto Rico*, 248 F.3d 29, 33 (1st Cir. 2001).

5

The plaintiff has provided insufficient answers to interrogatories and has not produced his tax-related and/or income-related documents to the defendants. The Rules make clear that when there is no response to a document request, the plaintiff may be prohibited from advancing the claim to which the documents relate. Fed. R. Civ. P. 37(d). The same prohibition can be levied where the plaintiff fails to adequately respond to interrogatories about his damages claim. *See also, Fisher v. Underwriters at Lloyd's London*, 1.15 F.2d 641, 646 (7th Cir. 1940) (precluding plaintiff from offering at trial any evidence about the nature and extent of her claimed disability because she did not answer interrogatories on that subject).

**B. The Plaintiff Should Be Precluded From Making Any Claim For Loss Of Future Earning Capacity, Or Loss of Job Opportunities Because Any Losses Are Speculative.**

Plaintiff has failed to provide a scintilla of evidence to support his claim of lost earnings, lost future earning capacity, and lost job opportunities.  To the extent that he intends to introduce self-serving testimony based solely on speculation as to what he could have earned or what jobs he could have in the future, such testimony should be precluded.  The plaintiff has failed to identify an expert to testify as to his lost future earning capacity or loss of future job opportunities and as such, plaintiff should be barred from seeking such damages.  At his deposition, plaintiff testified that he did not apply for and get denied a job based on his March 25, 2009 arrest.  Therefore, the plaintiff should not be permitted to pursue speculative damages claims at trial as he has failed to produce evidence of such losses and has not identified an expert to testify as to future lost earning capacity or lost job opportunities.

Plaintiff's self-serving speculation that he has lost "a hundred of thousand dollars or more" is an unhelpful and unreliable substitute for the kind of data courts must rely upon in calculating damages awards. *See Barbour v. Merril*, 48 F.3d 1270, 1279 (D.C. Cir. 1995)

6

(plaintiff has the burden of proving entitlement to front pay and of providing "essential data" to enable the Court to calculate an award with reasonable accuracy). Under Massachusetts law, future earnings awards must not be speculative, must be causally related to the wrongdoing, and must not provide a windfall to the plaintiff. *Kelly v. Airborne Freigh Corp.,* 140 F.3d 335, 354 (1st Cir. 1998); *Eldred v. Consolidated Freightways Corporation of Delaware,* 907 F.Supp. 26, 28 (D.Mass. 1995) (denying front pay damages given the "potentially speculative inquiry into front pay" and lengthy (ten months) period of damages).

It would be impossible for a jury to calculate plaintiff's lost earning capacity (past or future) or lost job opportunities claim because he has failed to produce any of his tax records to determine a lost earning claim and offers nothing other than subjective and self-serving beliefs about what he might have earned or the opportunities that might have been available to him. His self-serving testimony is far too speculative to be probative on the issue of damages.

### C.  Plaintiff's Claim That He Is Unable To Adopt A Child Is Speculative And Based Solely On Inadmissible Hearsay

Plaintiff contends without any proof, that he is unable to adopt a child as a result of his arrest. When asked in his deposition what evidence he has to show that he cannot adopt a child, the plaintiff stated that he met with someone at "something horizons" at an unknown date and time about possibly adopting a child. According to the plaintiff, he spoke with an unidentified woman who told him that his March 25, 2009 arrest could make it difficult for him to adopt a child. Plaintiff testified in his deposition, however, that he never even applied to adopt a child. The relevant portions of the deposition are as follows:

Q:  You're claiming that you were unable to adopt a child; is that correct?

A:  Correct

Q:  And why don't you explain to me what that claim is based upon?

A:  Based upon our interview with an adoption agency which we were informed that because of my criminal charges on my record that it would be nearly impossible to adopt a child.

Q:  What adoption agency told you that?

A:  It's in Needham, Massachusetts.  I forget the exact name of it.  Something Horizons I believe it's called.  Is it Grain Plain Avenue or off Great Plain Avenue?

Q:  Who told you that at the Horizons Adoption Center?

A:  I forget her name, but I think she is a - - I believe she was a nurse. . .

Q:  Your first child is also adopted; correct?

A:  No

Q:  So how far along in the process of trying to adopt a second child were you when you were told that it would be virtually impossible?

A:  Not that far because we were told it would be virtually impossible, so that's, you know, where it stands.

Q:  Okay.  So you didn't take any further steps after that?

A:  No.

Plaintiff has never identified the adoption agency or the employee from the adoption agency who supposedly told him that he would have a difficult time adopting due to his arrest.  Plaintiff's vague and ambiguous testimony about where he was told he could not adopt a child has prevented the Defendants from investigating plaintiff's claim further.  Plaintiff should be prohibited from testifying that he is unable to adopt a child due to this arrest because there is no admissible evidence to support that claim, he has failed to ever provide the name of the adoption agency where he allegedly went, and there are a myriad of factors that make adoption difficult that have nothing to do with plaintiff's arrest.  Further, such testimony will open the door to

plaintiff's other arrests that appear on his criminal record that may also have affected his ability to adopt.

It is apparent that plaintiff's intention is to improperly appeal to the passion and prejudices of the jury by claiming that he cannot adopt a child but for this arrest without any admissible evidence to support that claim whatsoever. Because the alleged conversation he had with an unknown woman at an unknown adoption agency on an unknown date is hearsay and inadmissible, he should be precluded from claiming that his March 25, 2009 arrest has prevented him from adopting a child at trial.

### D. Plaintiff's Claims of Reputational Harm Should Be Excluded As They Are Purely Speculative And Self-Serving.

Plaintiff claims that he suffered both personal and reputational harm as a result of his March 25, 2009 arrest. Plaintiff, however, offers only hearsay statements and self-serving testimony based on speculation to support this claim. A plaintiff cannot speculate about, but must provide evidence of, harm to his reputation. *National Fire Protection Association, Inc. v. Intern Code Council, Inc.,* 2006 WL 839501 * 26-27 (D. Mass. 2006). Plaintiff cannot prove reputational harm by offering self-serving speculation testimony that he had a "good" business reputation or reputation in the community prior to his arrest and a "bad" reputation afterwards.

The relevant deposition testimony as follows:

Q: Yes. You're saying your reputation was damaged. I'm trying to find out what it was before versus what it is now.

A: Certainly no one ever heard of thought of me as having a gun, so it's a dramatic difference form how I was perceived before these charges in my view.

Q: So that's it? That's the difference in your reputation from before and after is the perception that you had a gun?

A:  Correct.

Q:  Perception by whom?  Who has communicated this to you?

A:  The neighbor, a former co-worker of my wife.

Q:  How do you perceive your reputation now?

A:  I supposed it depends how you look at it.  If somebody hears of the allegations, then it will impact the reputation.  If somebody doesn't hear of it, then I think that the reputation is fine.

Q:  When you're talking about reputation, are you talking about your personal reputation or your business reputation or both?

A:  Both.

Q:  How has that impacted your business reputation?

A:  Well, it's prevented me from seeking certain employment because of that.

Q:  What employment have you tried to seek?

A:  It's prevented me from doing that.

The self-serving, personal viewpoint of the plaintiff, however, does not constitute the required corroborative evidence of reputational harm. *National Fire, 2006 WL 839501 at *26-27* ("I note that NFPA has failed to provide any business records or other evidence supporting Brodoff's 'self-serving declaration that such a loss was sustained.' "); *see also Dresser Indus., Inc. v. Gradall Co.*, 965 F.2d 1442, 1448 (7th Cir. 1992) ("Mere self-serving testimony is not enough to prove damage to a plaintiff's goodwill.").  Plaintiff has not identified any lost business opportunities for his real estate development or lost clients from his law practice as a result of his arrest.  Plaintiff further testified in his deposition that he did not know what his reputation was before the arrest or after the arrest.

To the extent plaintiff is allowed to testify as to his own beliefs regarding his reputational harm, the Defendants submit that they should be allowed to introduce evidence that the plaintiff did not have an upstanding reputation within his community prior this arrest.

## II.       CONCLUSION

For the foregoing reasons, the defendants respectfully request that this court preclude the plaintiff from testifying that he suffered lost past or future earning capacity, loss of job opportunities, and the inability to adopt a child at trial.

Respectfully submitted,

DEFENDANTS LAWRENCE CALDERONE,
ROBERT SHEETS, JEFFREY FIRNSTEIN, and
THE CITY OF BOSOTN
William F. Sinnott
Corporation Counsel
By their attorney:


/s/ Lisa Skehill Maki
Lisa Skehill Maki, BBO # 675344
Senior Assistant Corporation Counsel
Dawn M. King, BBO # 661669
Senior Assistant Corporation Counsel
City of Boston Law Department, Room 615
Boston, MA 02201
(617) 635-4022 (Maki)
(617) 635-4023 (King)
Lisa.maki@boston.gov
Dawn.King@boston.gov


## CERTIFICATE OF SERVICE

I, Lisa Skehill Maki, counsel for the Defendants do hereby certify that on this date I served upon counsel for all parties a copy of the instant motion.

DATE: 1/2/14                              /s/ Lisa Skehill Maki
                                          Lisa Skehill Maki