UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICK MICHAUD<br><br>　　Plaintiff,<br><br>　　v.<br><br>LAWRENCE A. CALDERONE,<br>KENNETH KELLY, JEFFREY FIRNSTEIN,<br>ROBERT SHEETS and CITY OF BOSTON<br><br>　　Defendants. | CIVIL ACTION NO.<br>1:12-CV-10540-WGY |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMIN*E TO EXCLUDE FACTS NOT KNOWN TO THE DEFENDANTS AT THE TIME OF THE PLAINTIFF'S ARREST**

Plaintiff Patrick Michaud ("Plaintiff") hereby opposes the Defendants' motion *in limin*e to exclude facts not known to the Defendants at the time of the Plaintiff's arrest. The motion should be denied because it ignores the notion that facts discovered *after* the arrest can still be relevant to Plaintiff's *malicious prosecution* claim. Moreover, even facts that were not known to Defendants can still be relevant to other issues, making blanket exclusion inappropriate.

**A. The Two Probable Cause Standards**

Once again, the Defendants attempt to elide the two probable cause standards involved in this case into one. The probable cause needed to arrest and the probable cause needed to prosecute will be divergent when—as here—the arrest and prosecution

occurred at different times.  The focus of both probable cause standards is on the officers' knowledge *at the time* of the wrongful arrest *or* institution of the complaint.  *See Beck v. State of Ohio*, 379 U.S. 89, 91 (1964); *Lincoln v. Shea*, 361 Mass. 1, 5, 277 N.E.2d 699, 702 (1972). Once an arrest is made, an officer cannot disregard new facts that come to light.  When those new facts render the information used to justify the arrest "sufficiently unreliable or incomplete…," it becomes "unreasonable to rely upon it *without additional information*." *Carroll v. Gillespie*, 14 Mass. App. Ct. 12, 20-21, 436 N.E.2d 431, 436 (1982) (emphasis added).

This is what happened here.  Even if one assumed for a moment that there was probable cause to arrest (and Plaintiff does not concede there was), the evidence will show that officers at the precinct quickly learned that the foundation for the arrest was fatally flawed.  In the 24 hours from when Defendants arrested the Plaintiff to when they commenced a criminal action against him, the following exculpatory information came to light which severely undermined the reliability of the alleged victim Benzan: (1) it was discovered that Benzan had a long criminal record; (2) the Boston Police Department confirmed the Plaintiff had no firearms registered to him and no licenses to carry; and (3) the Boston Police Department did not find any firearms, despite their claim that they conducted a search.

Based on this newly discovered evidence, it was clear that Benzan's testimony could not support probable cause without additional information.  Meanwhile, police learned that Benzan had a lengthy criminal history, even telling Plaintiff's attorney that fact less than an hour after the arrest (and before the arrest report was typed). The

Defendants never obtained the additional information needed to bolster Benzan's statement. Thus the so-called "new evidence" is relevant to Plaintiff's malicious prosecution claim.

**B. <u>Relevance of Other Issues</u>**

Probable cause is not the only issue in this case. The Plaintiff bears the burden of proving that he was unlawfully arrested and establishing a timeline of events. While it is true that Defendants neglected to review the MBTA surveillance video, that video is nevertheless relevant to establishing the precise time when Benzan was dropped off at the Forest Hills T station and when he departed for the Boston police station. The video will also corroborate the Plaintiff's testimony of the demeanor and physical appearance of Benzan at the time they parted ways. Regardless of whether the Boston officers knew what was in the video, it corroborates the Plaintiffs version of events and is admissible. MBTA Police Lt. Fredericks and Lt. Shea's testimony is also relevant because they can testify whether Mr. Benzan mentioned a gun in the 30 minutes he was at the Forest Hills T station. Such testimony is necessary because otherwise the inference will be that Benzan reported a gun to MBTA officials, who in turn referred him to the Boston police department. Such an inference is simply incorrect. Had Benzan mentioned to the MBTA that he was assaulted with a gun on MBTA property, the MBTA would have investigated and generated a report. The lack of a report corroborates the Plaintiff's version of his interaction with Benzan.

## CONCLUSION

For the reasons set forth above, the Plaintiffs should be permitted to present the MBTA surveillance footage and the testimony of MBTA Police Lt. Fredericks and Lt. Shea because they corroborate the Plaintiff's version of his exchange with Benzan and help establish the timeline. Mr. Benzan's criminal and immigration background, which were perhaps not known at the time of the arrest, but appear to have been known between the arrest and the institution of a criminal complaint against the Plaintiff, are relevant to the claim of malicious prosecution and thus are also admissible.

Respectfully submitted,

January 4, 2014

/s/ *Ilyas J. Rona*
Ilyas J. Rona (BBO # 642964)
Milligan Coughlin LLC
Seven Liberty Square, 2nd floor,
Boston, MA 02109
(617) 758-8800
ijr@milligancoughlin.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of this Court's CM/ECF system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system. Paper copies will be sent this day to non-registered participants.

/s/ *Ilyas J. Rona*